## CRABTREE v. ST. PAUL OPERA-HOUSE CO.

*(Circuit Court, D. Minnesota.    September 30, 1889.)*

1. CONTRACT—WANT OF MUTUALITY.

    Where the agents of a corporation, without authority, enter into a contract containing several provisions forming an entirety, the passage of a resolution by the company ratifying the contract except as to one provision is a repudiation of the contract, and releases the other party from all obligations on his part to perform it.

2. SAME.

    A corporation passed a resolution ratifying a contract made by its agent, except as to one provision, and the other party to the contract was notified. The latter refused to accept the modification, and two days later left the city where the terms were being settled.    *Held*, that a resolution passed the day after her departure, ratifying the contract as first made, came too late.

3. SAME—FORFEITURE OF EARNEST MONEY.

    The preliminary contract was for the purchase of property from the corporation, and $5,000 was paid in cash.    As to such payment the contract provided that "if, upon examination of the abstracts aforesaid, the title to the property is not good and marketable, or cannot be made so,  *  *  *  the party of the second part, at her option, may be released from this contract, and the five thousand dollars paid as aforesaid shall be refunded; but if the

title is good and marketable, and shall not be accepted by the party of the second part, the five thousand dollars, at the option of the party of the first part, shall be forfeited." *Held* that, the company having refused to ratify the contract, the other party was entitled to recover the cash payment.

At Law.    Action to recover earnest money.

*O. E. Holman*, for plaintiff.

*Williams & Goodenow* and *C. E. Flandrau*, for defendant.

NELSON, J.    A jury is waived by stipulation on file, and the case is tried by the court.    I find the following facts, upon which a judgment is rendered:

1. On the 10th of September, A. D. 1888, the following contract was entered into between the St. Paul Opera-House Company and Lotta M. Crabtree, a citizen of the state of New York:

### "CONTRACT.

### "*Exhibit A.*

"This agreement, made this 10th day of September, A. D. 1888, by and between the St. Paul Opera-House Company, a corporation organized under the laws of the state of Minnesota, party of the first part, and Miss Lotta M. Crabtree, of New York city, party of the second part, witnesseth:    That in consideration of the sum of one hundred and forty-two thousand five hundred dollars, to be paid by the party of the second part to the party of the first part, as hereinafter provided, the party of the first part hereby agrees to grant, bargain, sell, assign, transfer, and set over to the party of the second part, her heirs and assigns, the 'Grand Opera-House,' so called, in St. Paul, in the county of Ramsey, in the state of Minnesota, with all the rights, privileges, and easements thereto pertaining, and all the real estate, and all rights, privileges, and easements in any and all real estate in St. Paul aforesaid, particularly all that certain real estate in St. Paul aforesaid conveyed to the party of the first part by William F. Davidson and Sarah A. Davidson, his wife, by deed bearing date April 1st, 1884, recorded in the office of the register of deeds of the county of Ramsey aforesaid, in Book 182 of Deeds, page 693, together with all the rights of way for ingress or egress in a reasonable manner to or from said opera-house as they now exist through the 'Grand Block,' so called, and the 'Court Block,' so called, and the alley from Fourth street to said opera-house described in said deed, and also for the term in the lease hereinafter described over the strip of land seventeen and one-half feet wide adjoining said twelve-foot strip, leased by John L. Merriam to William F. Davidson by lease and supplemental agreement, both dated June 21st, A. D. 1883, but subject to all the provisions of said lease and supplemental agreement, and subject to the rights of all tenants and occupants of block 23 in St. Paul aforesaid, to use said rights of way in common with the party of the second part, her tenants, servants, and patrons.    The said right of way through the Grand block and through the Court block is fully described in that certain contract bearing date July 20th, 1887, made by and between Sarah A. Davidson, Peyton S. Davidson, Edward E. Davidson, James H. Davidson, and Frank L. Johnston, as executors of the last will and testament of William F. Davidson, deceased, of the one part, and the St. Paul Opera-House Company aforesaid of the other part, which said contract has been exhibited to the party of the second part hereto, and a true copy thereof delivered to her.    The party of the first part covenants and agrees to give or cause to be given and granted to the party of the second part, her heirs and assigns, the perpetual use of the box and man-

ager's offices, and the entrance and stairway to the gallery of said opera-house starting from the main entrance, as now used and enjoyed by the party of the first part. The party of the first part also agrees to sell to the party of the second part, as a part of this agreement, all the scenery, stage properties, desk, safe, office furniture, tickets, plats, and all other personal property and fixtures now being or used in and about the said opera-house and offices as now conducted, and to procure, if desired, from the executors aforesaid, another conveyance more particularly describing the exits and entrances aforesaid, including the exit by the iron staircase as now supported on the outside of said opera-house and Court block, and providing for the use of all said exits and entrances by the party of the second part, her heirs, assigns, tenants, servants, and patrons.

"In consideration of the premises said party of the second part agrees to pay to said party of the first part the sum of one hundred and forty-two thousand five hundred dollars, as follows: Five thousand dollars on the delivery of these presents; seventy thousand dollars on the delivery of good and sufficient deeds and instruments transferring said property so sold as aforesaid to the party of the second part; and sixty-seven thousand five hundred dollars on or before one year from September 10th, 1888, with interest at the rate of seven per cent. per annum, payable semi-annually, said deferred payment to be evidenced and secured by a note and mortgage in the usual form from the party of the second part to the party of the first upon all the real estate herein mentioned and described, and by an insurance against fire to at least fifty thousand dollars in some good insurance company or companies, with loss, if any, payable to the mortgagees to the extent of its or their interest. The party of the second part agrees to assume and carry out all the contracts heretofore made by the party of the first part with actors, players, singers, and musicians for performances in said opera-house during the season of 1888 and 1889; it being the intention hereof that said party of the second part shall assume all the contracts with attractions and People's Church made by said first party for said season, but no other contracts whatever.

"It is understood and agreed that the deed, note, and mortgage aforesaid shall bear date September 10th, 1888, but, as the title to said property cannot be examined by that date, it is covenanted and agreed that the net receipts and income from performances and church services in said opera-house from and after September 10th, 1888, shall be held by the party of the first part for the use of the party of the second part, to be paid or accounted for to her upon the completion of the sale herein contemplated, with interest thereon from the date of the receipt thereof; and the party of the second part agrees to pay interest on the seventy thousand dollars aforesaid from the 10th day of September, A. D. 1888, until the date of the closing of this deal under the terms hereof, if said second party shall then be ready to perform on her part; otherwise until she shall be ready. No interest to be due from the party of the second part for the time during which there may be any delay caused by the default or inability of the party of the first part in completing the sale according to the terms hereof. The transaction is to be consummated fifteen days after the delivery of all the abstracts hereinafter mentioned. Full abstracts of title of the real property and easements sold as aforesaid, and the Court block and Grand block aforesaid, shall be furnished to the party of the second part, or her agent, as soon as practicable. It is understood and agreed that the party of the second part may, if she so elect, purchase the stock of the Opera-House Company aforesaid, and receive the same in lieu of the deeds of conveyance and assignment aforesaid. It is understood and agreed that the sewer and tunnel connections with the public sewers shall remain and be maintained as at present, unless otherwise ordered by the municipal authorities. It is understood and agreed that the taxes and assessments provided for

in said lease from John L. Merriam to William F. Davidson shall be borne and paid, one-half by the party of the first part, or the devisees of said William F. Davidson, and one-half by the party of the second part, her heirs and assigns, until the expiration of said lease. Said party of the first part or said devisees shall keep in repair and good order the open passage from said opera-house to said Fourth street during the time of said lease.

"It is understood and agreed that the interest of the party of the first part in the bill-boards throughout the city, being a one-half interest therein, shall pass to the party of the second part under this contract, together with one-half interest in the bill-posting business, and all the tools, goods, and chattels belonging thereto. It is understood and agreed that the party of the first part guaranties that the Economy Steam-Heat Company will, at the option of the party of the second part, furnish the electric current necessary for electric light and steam heat for said opera-house for the term of five years, upon the following terms, viz.: For the heat, not exceeding two thousand dollars per annum; all the steam radiators and fixtures in the opera-house to be maintained by the party of the second part. For current for electric lights for each day in the week except Sunday, for ten months in the year, at a sum of not exceeding five hundred and seven dollars per month, unless more lights are required than at present, and in that event *pro rata* for such increased lights, and at a *pro rata* cost for such portion of the other two months in the year or Sundays as the party of the second part may desire the lights. And said party of the second part may at her option accept either one or both of said agreements for furnishing said heat and light, said option to be exercised within three months after the closing of this deal. It is understood and agreed that the party of the first part will cause the entrance to the gallery from Wabasha street aforesaid to be put into a condition satisfactory to the building inspector of St. Paul, and will give satisfactory security for the faithful performance of this covenant, and will indemnify said second party, her heirs and assigns, against all loss, damage, suits, and costs that the said second party may suffer or incur by reason of a non-compliance with said inspector's requirements heretofore made as to said gallery entrance. It is understood and agreed that the party of the first part will furnish to the party of the second part satisfactory security for the payment of the mortgages upon the Grand block and Court block covering the right of way aforesaid through said blocks, and forever to keep and indemnify the party of the second part, her heirs or assigns, from all harm, let, trouble, damage, costs, suits, that shall or may at any time arise or come out of the said mortgages.

"It is further agreed, and said first party guaranties, that said second party shall have and enjoy all and the same privileges and rights pertaining to said bill-boards and making paste for the season of 1888-89 heretofore granted by the estate of William F. Davidson, deceased: provided, that said enjoyment shall not interfere with the sale or improvement of any of the property of the said estate. It is agreed that said second party shall have reasonable access to all books of account kept by said first party in the management of its business, and that all contracts for performances for the season of 1888-89 shall be delivered to said second party when the other papers provided for herein are passed. It is agreed that said second party shall have full and complete possession and control of all the property herein described, and under the conditions herein specified, from and after the date when this deal is closed. It is understood and agreed that if, upon examination of the abstracts aforesaid, the title to the property is not good and marketable, or cannot be made so within sixty days, (except as to the mortgages aforesaid,) the party of the second part, at her option, may be released from this contract, and the five thousand dollars paid as aforesaid shall be refunded; but if the title is good and marketable, and shall not be accepted by the party of the second part, the

five thousand dollars, at the option of the party of the first part, shall be forfeited.

"In witness whereof said party of the second part has hereunto set her hand and affixed her seal the day and date first above written, and the said party of the first part has caused these presents to be subscribed and its corporate seal hereto affixed by its treasurer and secretary.

"ST. PAUL OPERA-HOUSE CO.,

"By EDW. E. DAVIDSON, Treasurer.  [Seal.]

"ANDREW DELANY, Secretary.

"LOTTA M. CRABTREE.  [Seal.]

"MRS. M. A. CRABTREE, Her Atty.

"Signed, sealed, and delivered in presence of

　　"C. E. HOLMAN.

　　"H. L. WILLIAMS, as to Opera-House.

　　"M. D. FLOWER."

2. I find that the contract was executed by Lotta M. Crabtree through her duly-authorized attorney, and by the St. Paul Opera-House Company through Edward E. Davidson, treasurer, and Andrew Delany, secretary, neither of whom had power or authority to enter into and execute the contract binding on the said company.

3. I find that at the time the contract was executed $5,000, according to the terms thereof, was paid by Lotta M. Crabtree to the treasurer of said company, and that the amount of the deferred installments was by consent of the parties who signed the contract changed so that $95,000, instead of $75,000, was to be paid by the vendee on the delivery of good and sufficient deeds and instruments transferring said property sold, and the balance of the purchase price—$42,500—was to be paid on or before one year from September 10, 1888, the payment of which deferred sum was agreed to be evidenced and secured by a note and mortgage.

4. I find that on the 29th day of September following the execution of the contract it was submitted to a meeting of the stockholders and directors of the St. Paul Opera-House Company, regularly called, and the following resolution duly adopted:

"RESOLUTION.

"The following resolution was offered by F. B. Clarke, and seconded by L. N. Scott, and passed unanimously:

"'Resolved, that the board of directors, through its president and secretary, be, and the same are hereby, authorized and empowered to sign, seal, acknowledge, and deliver a deed or deeds of conveyance of the St. Paul Opera-House property, with all easements belonging thereto, to Lotta M. Crabtree, and a bill of sale of all the personal property belonging to the corporation, all according to the terms of that certain contract between the St. Paul Opera-House Company and said Lotta M. Crabtree, dated September 10, 1888, which said contract we hereby ratify and affirm, excepting clauses referred to in agreement for sale and possession of one-half interest in bill-boards and bill-board business. The president and secretary are hereby authorized to make the proper conveyances of said opera-house and easements, and make bill of sale of property specified, excepting bill-board and business.'"

And said attorney of Lotta M. Crabtree, who executed the contract, was informed of the adoption of said resolution. I also find that, at and

prior to the passage of this resolution, Lotta M. Crabtree, the party of the second part, prepared and executed the note and mortgage, and the balance of the last payment was provided by her and brought to the city of St. Paul, and deposited in a bank. I further find that, subsequent to the adoption of their resolution, the officers of the St. Paul Opera-House Co. made propositions to the attorney of the second part looking to a modification of the contract of September 10, 1888, all of which were declined, and two days after being informed of the passage of the resolution aforesaid she left the city, and refused to stand by the contract.

5. I find that on October 2, 1888, after the attorney of Lotta M. Crabtree, who executed the contract for her, had been informed of the resolution of September 29th, and had left the city, and refused to have anything further to do with the contract, the following resolution was adopted at a special meeting of the stockholders of the St. Paul Opera-House Company:

"RESOLUTION, &C.

"ST PAUL, MINN, Oct. 2, 1888.

"A special meeting of stockholders of the St. Paul Opera-House Company, held at following request:　　　'ST. PAUL, MINN., Oct. 2, 1888.

"'A. Delany, Sec'y. St. Paul Opera-House Co.--DEAR SIR: You are requested to call a special meeting of the stockholders of the St. Paul Opera-House Company, at 340 Cedar street, this afternoon at 3:30 o'clock.

"'P. S. DAVIDSON,　　} Representing stock owned by Es-
"'EDW. E. DAVIDSON, { tate of William F. Davidson.'

"A. Delany offered the following resolution, seconded by E. E. Davidson: 'Resolved, that the resolution passed at the meeting of stockholders of St. Paul Opera-House Company, held Sept. 29th, 1888, ratifying sale of opera-house property to Lotta M. Crabtree, be, and the same is hereby, amended by striking out the following words: "Excepting clauses referred to in agreement for sale and possession of one-half interest in bill-boards and bill-posting business."' Carried by the following vote: Ayes--A. Delany, E. E. Davidson. Nays--L. N. Scott. At this meeting the following stock was represented: E. E. Davidson, 100 shares; L. N. Scott, 100 shares; P. S. Davidson, 10 shares; A. Delany, 10 shares; P. S. Davidson and Edw. E. Davidson, 3,500 shares, representing stock estate of Wm. F. Davidson."

6. I find that before the commencement of this suit, viz., on February 1, 1889, by a proper instrument in writing, Lotta M. Crabtree duly assigned and transferred to the plaintiff all her right, title, and interest in the sum of $5,000 paid by her to the treasurer of the St. Paul Opera-House Company on the execution of the contract September 10, 1888, and in the following March a demand was made upon the treasurer of the company for the amount.

CONCLUSIONS.

I am of the opinion that the contract dated September 10, 1888, is an entirety, and ratification of the whole was necessary to bind the parties thereto. I am of the opinion that by the passage of the resolution of September 29, 1888, the St. Paul Opera-House Company repudiated the contract of September 10, 1888, and declined to ratify the act of the treasurer and secretary, who executed it; and Lotta M. Crabtree was

thus released from all obligation to perform on her part, and she withdrew from the same, as she had a right to do. I am of the opinion that the contract of September 10, 1888, being treated by the company as imperfect and inoperative, and not a binding obligation, Lotta M. Crabtree could recover the amount paid at the time the contract was executed; and, further, that the assignment from Lotta M. Crabtree to the plaintiff is valid, and entitles her to judgment. I am of the opinion that the resolution of October 2, 1888, amending that of September 29, 1888, if it is a ratification of the contract of September 10, 1888, came too late, and that the minds of the parties never met so as to form a perfect and operative contract. Judgment will be entered in favor of the plaintiff for the sum of $5,000 and interest from September 10, 1888, to date, at the rate of 7 per cent. per annum, being $369.44.